## A. H. Geuting Company v. City of Philadelphia et al.

*Duane, Morris & Heckscher*, for plaintiff.

*Abraham L. Freedman*, city solicitor; *Doris M. Harris*, assistant city solicitor, and *Abraham Wernick*, deputy city solicitor, for defendants.

HAGAN, J., June 2, 1954.—This case was heard on March 8, 1954, by the writer of this adjudication. Thereafter, requests for findings of fact and conclusions of law and briefs were submitted by counsel for the parties in interest.

### Pleadings and Issues Raised Therein

This action was instituted by a complaint in equity filed by A. H. Geuting Company against above-named defendants. The complaint, after identifying the par-

ties, averred substantially as follows: That plaintiff is the owner of premises 1312-14 Chestnut Street, Philadelphia, Pa., which it leases to the Geuting Company; that plaintiff has no other receipts and is not engaged in any trade, business, profession, vocation, making sales to persons, manufacturing, commercial or financial activity, service or business, and is not engaged in any other activity whatsoever; that on December 9, 1952, the City of Philadelphia enacted an ordinance known as the Philadelphia Mercantile License Tax Ordinance; that under this ordinance the city sought to require plaintiff to register for a license and to impose a tax on plaintiff; that plaintiff performs no services and provides no utilities or goods in connection with the rental of the premises; that all plaintiff does in respect to the premises is collect rents, pay property taxes and maintain fire insurance; that plaintiff is not engaged in any activity which would subject it to the provisions of the ordinance; that it has been threatened by the city with an action to collect the license fee and tax; that no clear right of refund is provided for in the ordinance; that plaintiff is without an adequate remedy at law, and that irreparable damage and a multiplicity of suits would ensue unless the relief prayed for by plaintiff is granted. Plaintiff's prayer for relief is that defendants be restrained from requiring plaintiff to secure a mercantile license and from levying, assessing and collecting or attempting to levy, assess or collect any license fee or license tax from plaintiff under the ordinance.

The answer of defendants admitted the identity of the parties, the passage of the ordinance, the attempt by the city to impose the tax upon plaintiff and to require plaintiff to secure a license for the year 1953 in respect to its ownership of premises 1312-14 Chestnut Street. The answer denied all other averments of fact and demanded proof, and it also denied the legal

conclusion that plaintiff is not subject to the provisions of the ordinance.

The answer also contained new matter which averred, in substance, as follows: That plaintiff was incorporated in 1919 for the purpose of buying, selling and dealing in boots, shoes and footwear of all kinds, findings, accessories and incidental articles for use in connection therewith; that on February 1, 1952, plaintiff leased premises 1312-14 Chestnut Street to the Geuting Company for a period of 20 years at an annual rental of $80,000 for the first five years and $85,000 thereafter, plus an additional rental of five percent of net sales in excess of the minimum rental, and a copy of the lease was attached to the answer; that on February 1, 1952, leases between plaintiff and certain tenants of the premises were assigned to the Geuting Company, and the receipts derived from said tenants were to be considered net sales by the Geuting Company for the purpose of collecting additional rents; and that plaintiff's articles of incorporation contained no provision permitting plaintiff to own real estate for the mere purpose of renting it.

Plaintiff filed a reply to defendants' new matter in which it substantially admitted all of its averments but denied that plaintiff is not authorized to own and lease real estate.

As a result of the above pleadings the only resulting issues of fact arose from the allegations in plaintiff's complaint and denied in defendants' answer that plaintiff performed no services in connection with the leased premises, but merely collected rents, paid property taxes and maintained fire insurance on the building. The legal issue which resulted from the pleadings was this: Assuming that plaintiff could prove the averments of fact denied by defendants, is plaintiff engaged in business in the City of Philadelphia as

defined in the Philadelphia Mercantile License Tax Ordinance?

*Findings of Fact*

1. Plaintiff, A. H. Geuting Company, is a Pennsylvania corporation having its principal place of business at 1617 Land Title Building, Philadelphia 10, Pa.

2. Defendant City of Philadelphia is a municipal corporation, created and existing under and pursuant to the authority of the Commonwealth of Pennsylvania and is a city of the first class.

3. Defendant George S. Forde is the Revenue Commissioner of the City of Philadelphia and, pursuant to the provisions of section 3-101 of the Philadelphia Home Rule Charter of April 17, 1951, pursuant to the Act of April 21, 1949, P. L. 665, 53 PS §3421, he is head of the Department of Collections of the City of Philadelphia and is charged with the duty of exercising the power and performing the duties vested in and imposed on the department of collections.

4. Defendant Walter Pytko is Commissioner of Licenses and Inspections of the City of Philadelphia and, pursuant to the provisions of section 3-101 of the Philadelphia Home Rule Charter he is head of the Department of Licenses and Inspections of the City of Philadelphia and is charged with the duty of exercising the powers and performing the duties vested in and imposed on the department of licenses and inspections.

5. Plaintiff was incorporated on April 4, 1919, for the purpose of buying, selling and dealing in boots, shoes and footwear of all kinds, findings, accessories and incidental articles for use in connection therewith.

6. In the operation of the business plaintiff owned a 15-story building at 1312-14 Chestnut Street, Philadelphia, Pa.

7. Plaintiff operated a shoe business on the aforesaid premises for approximately 15 years prior to February 1, 1952.

8. Ten floors of the building were used in the operation of the shoe business and the remainder of the floors were sublet to tenants.

9. Plaintiff supplied to the tenants and concessionaires in the building light, heat, janitor and elevator service.

10. On February 1, 1952, plaintiff sold all of its assets (other than cash, real estate, prepaid insurance on real estate, accounts receivable from employes and stockholders, prepaid real estate taxes, and claims for tax refunds, if any) to the Geuting Company, a corporation completely unrelated to plaintiff. As part of the entire agreement with the Geuting Company, plaintiff assigned to it leases held by plaintiff on premises 132 West Chelten Avenue and 7632 City Line Avenue, Philadelphia, and Suburban Square, Ardmore, Pa.

11. In connection with the aforesaid sale plaintiff entered into a lease with the Geuting Company for premises 1312-14 Chestnut Street for a term of 20 years, at an annual rental of $80,000 for the first five years and $85,000 for each year thereafter, plus an additional annual rental equal to the amount by which five percent of the lessee's net sales exceeded the minimum rental. The lease was dated February 1, 1952, and contained an assignment of all existing leases and licenses for space in the premises to the lessee, so that plaintiff collects no rent from anyone other than the Geuting Company. The receipts derived from the subtenants are to be considered net sales for the purpose of calculating the additional rental.

12. Plaintiff is not now and has not been engaged in the shoe business since February 1, 1952.

13. Plaintiff does not and has not since February 1, 1952, furnished any services, utilities, or goods in connection with premises 1312-14 Chestnut Street, Philadelphia, Pa.

14. Plaintiff collects the rentals from premises 1312-14 Chestnut Street and pays the fire insurance and real estate taxes thereon.

15. Plaintiff's only obligation to lessee in connection with the premises is to keep the roof and exterior walls in good repair.

16. Plaintiff maintains a bank account with Tradesmens Land Title Bank & Trust Co., in which the rents of the premises are deposited.

17. Plaintiff's only other assets are United States Government Bonds.

18. All of the capital stock of plaintiff corporation is owned by William A. Geuting and his wife.

19. William A. Geuting, as president of plaintiff corporation, draws a salary of $20,000 a year, and his wife, as secretary, receives a salary of $2,400, for which neither performs any services.

20. Plaintiff carries unemployment compensation insurance on William A. Geuting and his wife.

21. Plaintiff maintains a registered office in the offices of its attorneys.

22. Plaintiff's office expenses are only those required for the maintenance of its corporate existence, and they are nominal.

23. On December 9, 1952, the City of Philadelphia enacted an ordinance known as the Mercantile License Tax Ordinance, which required a license of, and imposed a tax upon, all those engaging in "business" in the City of Philadelphia.

24. "Business" is defined in the Philadelphia Mercantile License Tax Ordinance as ". . . the carrying on or exercising for gain or profit within the City of Philadelphia of any trade, business, profession, vocation, or making sales to persons within the City of Philadelphia, or of any manufacturing, commercial or financial activity, service or business, including but not limited to manufacturers, brokers, wholesale deal-

ers or wholesale vendors, retail dealers or retail vendors."

25. Pursuant to the ordinance defendant City of Philadelphia sought to impose the mercantile license tax upon plaintiff and to require it to procure a mercantile license for the year 1953.

### Discussion

The foregoing findings of fact establish that plaintiff owns premises 1312-14 Chestnut Street, Philadelphia, Pa.; that prior to February 1, 1952, plaintiff operated a retail shoe store on part of the premises and rented other portions thereof; that on the above date plaintiff sold its entire business to the Geuting Company; that since that date plaintiff's entire activities have consisted of owning the building, collecting rent therefrom, and paying property taxes and fire insurance thereon; that plaintiff supplies no heat, light, elevator or any other services, and its only liability in connection with the premises is for repairs to the exterior; that all of the stock of plaintiff corporation is owned by William A. Geuting and his wife, who are also the corporate officers; that plaintiff pays substantial salaries to William A. Geuting and his wife for serving as officers, but neither performs any services in return for this compensation, and that plaintiff carries unemployment compensation insurance on William A. Geuting and his wife.

Basically, therefore, plaintiff corporation exists only for the purpose of owning the building located at 1312-14 Chestnut Street and collecting rents therefrom, and the routine functions necessary to maintain its corporate existence are performed by its attorneys. On the basis of these facts the city contends that plaintiff is "engaging in business" within the provisions of the Philadelphia Mercantile License Tax Ordinance, and plaintiff contends that it is not.

Initially, it is to be noted that there is no problem here presented of the *power* of the city under the Sterling Act to impose the tax upon plaintiff which it here attempts to impose. The sole issue is whether, *under the above facts*, plaintiff is "engaging in business" within the meaning of those words as they are employed and defined in the ordinance. If so, plaintiff is subject to the licensing and taxing provisions of the ordinance; if not, it is exempt from them.

In approaching this problem, we must be mindful of the rule of interpretation to be applied in such instances, viz., that " 'tax statutes should receive a strict construction. . . . In cases of doubt the construction should be against the government. . . . While it is the duty of every citizen to bear his just share in supporting the government, he cannot be compelled to do so except in a way provided by a statute' ": Murray et ux. v. Philadelphia et al., 364 Pa. 157, 163-64.

The city has cited no Pennsylvania cases upholding the proposition that a corporation which merely owns property and collects rent, without performing any services in connection with the property, is thereby engaged in business within the meaning of a tax statute. The city further admits that, if the facts of the instant case were being decided under the Philadelphia Income Tax Ordinance, the court would be obliged to hold that plaintiff was not engaged in business within the meaning of that ordinance, as construed by the cases of Pennsylvania Company, etc., tr., v. Philadelphia et al., 346 Pa. 406; Breitinger v. Philadelphia et al., 363 Pa. 512; Murray et ux. v. Philadelphia et al., 363 Pa. 524, and Murray et ux. v. Philadelphia et al., 364 Pa. 157. The city contends, however, that it was the intention of city council, in passing the Mercantile License Tax Ordinance, to broaden the meaning of the term "business", as em-

ployed in that ordinance, so that it would cover fact situations held in the above cited cases not to have been covered by the Philadelphia Income Tax Ordinance. The city, therefore, contends that the term "business", as employed in the Mercantile License Tax Ordinance, is broad enough to cover the fact situation here presented.

"Business" is defined in the Philadelphia Income Tax Ordinance as "An enterprise, activity, profession, or undertaking of any nature conducted for profit or ordinarily conducted for profit, whether by an individual, copartnership, association or any other entity".

The tax is imposed by that ordinance upon businesses, professions or other activities.

In the case of Pennsylvania Company, etc., tr., v. Philadelphia et al., supra, the question in issue, as set forth by the court at page 409, was as follows:

"Is a corporate trustee, operating real estate as mortgagee in possession or as owner, for the purpose of protecting the assets of the estate pending liquidation and sale, engaged in 'a business, enterprise, activity or undertaking conducted for profit' within the meaning of the Philadelphia Income Tax Ordinance?"

The court there held that plaintiff was conducting a business for profit, pointing out that plaintiff furnished numerous services, consisting of labor, heat, light, power and supervision, and the court said at page 412:

"In no case did the duties of the trustee consist solely of collecting rent and transmitting same to the beneficiaries."

The court further said, at pages 414-15:

"The ordinance defined 'business' as an *'enterprise'* or *'undertaking'* *'conducted* for profit or ordinarily *conducted* for profit.' These words signify activity and participation on the part of the taxpayer."

In Breitinger v. Philadelphia et al., supra, plaintiff, a lawyer, owned more than 13 parcels of real estate and seven mortgages. He employed several licensed real estate agents who handled the various real estate transactions for him; he employed a janitor to service part of several of the properties, and he also furnished electricity to certain of the properties. The lower court held that plaintiff was not engaged in "business", within the meaning of that term as employed in the Philadelphia Income Tax Ordinance, and one of its conclusions of law, which is quoted at page 516 of the Breitinger case, was as follows:

"The term 'business' as used in the Ordinance involves more than the ownership of property or the receipt of income derived from the ownership of property."

On appeal the Supreme Court affirmed, stating on pages 523-24:

" 'When used in tax statutes similar to that involved in the case at bar, "business" or "doing business" connote something more than the ownership of property and the receipt of income derived from property.' "

In Murray et ux. v. Philadelphia et al., 363 Pa. 524, plaintiff husband's only occupation had been that of operating a haberdashery business, and plaintiff wife was not engaged in any business. They owned two buildings which were rented by them, and in the management of which they furnished no heat, light, janitor or elevator services, and their only services in respect to the buildings consisted in collecting the rents, paying the taxes, and maintaining fire insurance. The court there held, at page 529, that:

". . . plaintiffs were not engaged in 'business, professions or other activities' within the meaning of the

[Philadelphia Income Tax] ordinance for the reasons stated in sustaining the injunction granted in Breitinger's case."

The rationale of the above cases is that the definition of "business", in the Philadelphia Income Tax Ordinance, as "an *enterprise, activity* . . . or *undertaking* . . . *conducted* for profit . . ." (italics supplied) carries the connotation that, in order to be engaged in business, some activity is required, and that the mere passive owning of real estate and collecting rents therefrom is not sufficient activity to constitute "business" within the meaning of that term as defined in the ordinance.

In the light of the foregoing, let us now examine the definitions employed in the Mercantile License Tax Ordinance in order to determine whether or not there is support for the city's contention, that the definitions therein are sufficiently broader than in the Income Tax Ordinance so as to justify a holding that plaintiff in the instant case, although not engaged in business within the terms of the income tax ordinance, is engaged in business within the terms of the Mercantile License Tax Ordinance.

"Business" is defined in the Mercantile License Tax Ordinance as ". . . the carrying on or exercising for gain or profit within the City of Philadelphia of any trade, business, profession, vocation, or making sales to persons within the City of Philadelphia, or of any manufacturing, commercial or financial activity, service or business, including but not limited to manufacturers, brokers, wholesale dealers or wholesale vendors, retail dealers or retail vendors". A license is required of ". . . every person desiring to engage in or to continue to engage in any business", and the tax is imposed upon "Every person engaging in" business.

The portion of the ordinance upon which the city relies to support its contention, that the definition of

"business" in the Mercantile License Tax Ordinance is broader than in the Income Tax Ordinance, is that portion of the definition of "business" which states that "business" includes ". . . any manufacturing, commercial or financial activity". More specifically, the city argues that plaintiff is engaged in a "commercial activity". Thus, the city's final requested finding of fact was: "The plaintiff is engaged in a commercial activity", and one of the city's requested conclusions of law was that "the plaintiff corporation is engaged in a commercial activity for gain or profit within the meaning of the City Mercantile License Tax Ordinance of December 9, 1952, and therefore it is subject to the provisions of this Ordinance".

It will be noted, however, that "business" was defined, inter alia, in the Philadelphia Income Tax Ordinance as an ". . . activity . . . of any nature conducted for profit. . . ." Thus, it would appear that the definition of "business" in the Income Tax Ordinance is at least as broad, if not broader than the definition of "business" in the Mercantile License Tax Ordinance. In any event, considering that tax and license statutes must be strictly construed, we cannot say that the definition of "business" in the Mercantile License Tax Ordinance is so much broader than in the Income Tax Ordinance as to enable us to hold as a matter of law that the former encompasses the facts of the instant case, whereas the latter does not.

In examining the Mercantile License Tax Ordinance, we find in the definition of "business" such terms as "carrying on", "exercising" and "activity" A license is required of every person "desiring to *engage* in or continue to *engage* in any business", and the tax is imposed upon every person *"engaging* in" business. (Italics supplied.) The above terms carry the connotation of a requirement of activity just as

clearly as those employed in the Income Tax Ordinance. Therefore, applying the same reasoning which the Supreme Court applied in Pennsylvania Company, etc., tr., v. Philadelphia et al., Breitinger v. Philadelphia et al., and Murray et ux. v. Philadelphia et al., supra, that mere ownership of property without an element of management, supervision or supplying of services does not constitute engaging in business within the meaning of the Philadelphia Income Tax Ordinance, we hold that these same factors do not constitute engaging in business within the meaning of the Philadelphia Mercantile License Tax Ordinance.

It would appear that the city solicitor, in drafting the regulations promulgated under the Mercantile License Tax Ordinance, originally came to the same conclusion, because section 317(b) of the regulations (the section of the regulations most nearly on point in the instant case) states:

"(b) Any person *carrying on the business* of renting buildings, offices, space, stores, dwelling houses, etc., shall include gross rentals received in the tax base. . . ."

The term "carrying on" employed in the regulations would seem to clearly indicate a requirement of some business activity in the nature of furnishing services, management or supervision.

The conclusion we have reached is buttressed by the cases which have held that the mere ownership of property and collection of rents does not constitute doing business under the Corporate Net Income Tax Act of May 16, 1935, P. L. 208; Commonwealth v. Delaware River Railroad & Bridge Company, 37 D. & C. 449; Commonwealth v. Reading & Southwestern Street Railway Company, 50 D. & C. 208, and the cases cited therein.

In the Delaware River R. R. & Bridge Co. case there was a fact situation very similar to the one in the

instant case. Prior to 1918 defendant company had operated a railroad, and in the year 1918 it leased all of its property to the Pennsylvania Railroad Company, and thereafter the lessee operated the railroad. The sole income of defendant, therefore, consisted of rentals under the lease. Defendant held annual meetings for the purpose of approving the annual report of the president and the board of directors, and electing new directors. The directors held an annual meeting for the purpose of transacting routine corporate business. Improvements to the railroad property were made by lessee but were charged to lessor. Under those facts, defendant was held not to be doing business within the meaning of the Corporate Net Income Tax Act. One of the cases cited by the court in support of its decision was Lewellyn v. Pittsburgh, B. & L. E. R. Co., 222 Fed. 177, the court quoting from page 184 of that case as follows:

" 'From the decisions reviewed, it may be accepted as established that corporate acts performed by a corporation in the exercise of its primary franchises, as the maintenance of its corporate existence, do not constitute "doing business" within the meaning of the statute, nor do corporate acts which relate strictly to the internal affairs of the corporation and which do not include the exercise of its secondary franchises. The statute, therefore, distinguishes between corporate acts and discloses an intention to impose a tax for the privilege of doing only those acts which constitute "carrying on and doing business." ' "

The court in the Delaware River Railroad & Bridge Company case also quoted at length from McCoach, etc., v. Minehill, etc., R. R. Co., 228 U. S. 295. In the McCoach case, the question in issue was whether defendant company was "engaged in business" within the meaning of that term as used in the Federal Cor-

poration Tax Act of August 5, 1909. The facts of the McCoach case are strikingly similar to the instant one. Defendant operated a railroad until 1896, and then it leased all of its property to the Philadelphia & Reading Railroad Co. Lessor, defendant, maintained its corporate existence. It held an annual election of the president and board of managers, which board annually elected a secretary and treasurer; it received annual rent from the Reading Company under the lease; it maintained a bank deposit and annually received interest thereon; it maintained a "contingent fund", from which it annually received sums as interest or dividends; it annually paid the ordinary and necessary expenses of maintaining its offices and keeping up the activities of its corporate existence, including the payment of salaries to its officers and clerks; and it kept and maintained at its offices stock books for the transfer of its capital stock, which was bought and sold upon the market. The Supreme Court held that, under those facts, defendant was not "engaged in business" within the meaning of the Federal Corporation Tax Act, and said at page 306:

"In our opinion the mere receipt of income from the property leased (the property being used in business by the lessee and not by the lessor) and the receipt of interest and dividends from invested funds, bank balances, and the like, and the distribution thereof among the stockholders of the Minehill Company, amount to no more than receiving the ordinary fruits that arise from the ownership of property."

The city points out that the Philadelphia Income Tax Ordinance and the Pennsylvania Corporate Net Income Tax Act have been held to be property taxes, while the Mercantile License Tax has been held to be a tax on the privilege of engaging in business. Thus, the city states in its brief:

"There is, of course, a wide distinction between the Mercantile License Tax, which is for the privilege of engaging in a business or commercial activity, and a tax on net income which is a property tax, as was so clearly pointed out in National Biscuit Co. v. Philadelphia, 374 Pa. 604, 613."

Just how this difference affects the question of whether or not plaintiff herein is doing business within the meaning of the Mercantile License Tax Ordinance, the city fails to state. We recognize, as has been pointed out in many cases, and most recently in the National Biscuit Company case, that there is a difference for many purposes between a property tax and a tax on the privilege of engaging in business, particularly in determining the issue of whether a municipality has the power to levy a particular tax under the Sterling Act, but we do not believe that such difference affects the issue in the instant case.

It would appear rather anomalous to say that, under a given set of facts, a corporation is not engaged in "business" within the meaning of that term as employed in the Philadelphia Income Tax Ordinance, but is engaged in "business" within the meaning of almost identical words employed in the Mercantile License Tax Ordinance. Furthermore, it might be pointed out that the case of McCoach v. Minehill R. R. Company, supra, which was cited by the Dauphin County Court in Commonwealth v. Delaware River R. R. & Bridge Co., supra, (a case arising under the Pennsylvania Corporate Net Income Tax Act) and by the Pennsylvania Supreme Court in Breitinger v. Philadelphia, supra (a case arising under the Philadelphia Income Tax Ordinance), was one where the United States Supreme Court specifically held that the tax there in question was not a property tax but a tax on the privilege of engaging in business in a corporate form.

We, therefore, conclude that plaintiff, under the facts of this case, is not engaged in "business" within the meaning of that term as employed in the Philadelphia Mercantile License Tax Ordinance and that, therefore, plaintiff is not subject to either the licensing or taxing provisions of the ordinance.

## Conclusions of Law

1. Plaintiff is not engaged in "business" within the meaning of that term as employed in the Mercantile License Tax Ordinance of the City of Philadelphia of December 9, 1952.

2. Plaintiff is not subject to either the licensing or taxing provisions of the Mercantile License Tax Ordinance of the City of Philadelphia of December 9, 1952.

## Decree Nisi

And now, to wit, June 2, 1954, in accordance with the foregoing findings of fact and conclusions of law, it is ordered, adjudged and decreed as follows:

1. The City of Philadelphia, George S. Forde, Revenue Commissioner; Walter Pytko, Commissioner of Licenses and Inspections, and all other officers and agents acting in behalf of said defendants, or any of them, are enjoined from requiring plaintiff to secure a mercantile license and from levying, assessing and collecting or attempting to levy, assess or collect any mercantile license fee or mercantile license tax from plaintiff under the Ordinance of December 9, 1952.

2. The costs of these proceedings are imposed upon defendant, City of Philadelphia.

3. The prothonotary is hereby directed to enter this decree and notify counsel for the parties of the filing of this adjudication, informing them that unless exceptions are filed thereto within 20 days after notice of the filing of this adjudication, this decree shall become final.